UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,                    Case No. 18-CR-20655
          Plaintiff,                         Hon. Mark A. Goldsmith
v.                                           United States District Judge

D1- LeRoy Constantine,

          Defendant.
_____

**United States of America's Response Opposing Defendant's
Motion for Compassionate Release Based on Risk of COVID-19**
_____

Defendant LeRoy Constantine seeks compassionate release under

18 U.S.C. § 3582(c)(1)(A)(i). This motion should be denied given that, on

three different occasions, involving three different vaccines,

Constantine declined a vaccination against COVID-19; that there is

substantial time remaining on his sentence; and other considerations

under 18 U.S.C. § 3553(a).

## I.    Background

The United States Department of Labor, began investigating

Constantine after discovering that a single IP address, tied to his

apartment, was used to create and/or certify over 100 false

unemployment insurance claims online. Constantine filed and/or accessed approximately 250+ separate unemployment insurance claims between August 2014 and April 2016, resulting in a loss of $188,946.00. Had all of Constantine's fraudulent claims been successful, the loss amount would have been approximately $1,200,000.

Constantine pleaded guilty to two counts of Wire Fraud (Counts 2 and 3) and one count of Aggravated Identity Theft (Count 4). Absent a variance or departure, his sentencing guideline range was 70 to 81 months. (PSR ¶62). On October 10, 2019, Constantine was sentence to 46 months on counts 2 and 3 to run currently, and 24 months on count 4 to run consecutive to the sentence on counts 2 and 3. (ECF N0. 33, PageID 118-19).

Constantine is serving his sentence at FCI McKean, with an anticipated release date of July 15, 2025.  He has served approximately 11 months of a 70 month sentence. Four months after he began his sentence, Constantine was disciplined for failure to obey an order and lost his phone and visitation privileges for 6 months. He was also cited for being in an unauthorized area, was fined $100 and lost his commissary privileges.

## II.    Request for Compassionate Release

On December 10, 2020, Constantine submitted a request for compassionate release to the warden. (Exhibit A: Request for Compassionate Release). The request was based on the following medical conditions: asthma, knee injury, and a BMI of 40. The warden denied the request on January 5, 2021. (Exhibit B: Warden's Denial). On January 21, 2021, Constantine tested positive for COVID-19 and recovered. (Exhibit C: Constantine Medical Records). Now he moves for compassionate release based on his claim that he suffers from "long haul" COVID syndrome in addition to pre-existing conditions which make it more likely he will be hospitalized and die from COVID-19 and its aftereffects. The long haul COVID-19 claim was not raised in the December 10, 2020 request to the warden.

The undersigned obtained Constantine's medical records for the past year from BOP, which are filed under seal as Exhibit C. The records reveal that Constantine, who is 35 years old, presented with elevated blood pressure and knee pain. These conditions appear well-controlled at this time with medication provided by the institution. Constantine is fully ambulatory and appears to engage in all the

- 3 -

normal activities of daily living. Constantine's claim that he is obese is simply false, at 5'8" and 178 pounds his BMI is 25, well below the 30-point threshold for obesity. In fact, by Constantine's own admission he is on the lowest end of the BMI range for simply being overweight. (ECF No. 53, PageID 193).

Constantine relies heavily on his claim that he suffers from long-haul COVID. (ECF No. 53, PageID 191). This is not supported by the medical records and appears to be self-proclaimed to support this request for compassionate release. Although he was diagnosed with COVID-19 on January 21, 2021, his medical records indicate he was asymptomatic. On several occasions after he recovered, he claimed to have shortness of breath. This appears not to have been a significant issue requiring treatment.

### III. BOP's Response to the COVID-19 Pandemic

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations based on a plan that was prepared over many years and refined in early

2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The government recognizes that the COVID-19 case rate at a particular institution may change at any time. We therefore focus primarily on considerations specific to Constantine. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for Constantine's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences.[1] This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

---

[1] This Court does not have authority to grant a transfer to home confinement, or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see also, e.g.*, *United States v. Gray*, 2020 WL 6822949, at *2 (E.D. Pa. Nov. 20, 2020); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").

These strenuous efforts have been fruitful. To be sure, there is no way to stop this virus short of widespread vaccination, and inmates inevitably will be infected, and some may succumb, just as in the population at large. But it is notable that the rate of deaths in federal prisons has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.

Specifically, as it relates to Constantine, BOP's aggressive efforts have extended to FCI McKean. That institution houses 981 inmates. At present, there are 0 inmates who are reported positive and 435 current inmates who previously tested positive and recovered. There has been one COVID-related death at this institution. The latest statistics are available at www.bop.gov/coronavirus.

### A. Vaccinations

BOP is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP receives the COVID-19

vaccine as it becomes available. As of the week of February 8, 2021, doses of the vaccine had been delivered to every BOP institution.

BOP offered the vaccine first to full-time staff because staff members—who come and go between the facility and the community—present a more likely vector for COVID-19 transmission into an institution. As of this time, vaccines have been administered to all willing staff members, and BOP continues to encourage staff members who have not accepted a vaccine to do so. (Staff members may also obtain and have obtained vaccinations from other providers in the community.)

BOP is now in the process of offering vaccines to inmates, proceeding based on priority of need in accordance with CDC guidelines. As of this time, BOP has administered a total of 197,973 doses to staff and inmates nationwide. As of mid-April 2021, BOP estimated that if it continued to receive doses at the then-current pace it will have offered a vaccine to every inmate in its custody by June 1, 2021. As a court recently observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization

rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (footnote omitted).

At FCI McKean, where Constantine is held, BOP has fully vaccinated 24 staff members, and 618 inmates, 63% of the current inmate population, and does not account for those additional inmates who declined vaccination.

The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

## III.   Discussion

### A.   Governing Law

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
> (1)  in any case—
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
(i) extraordinary and compelling reasons warrant such a reduction . . .
and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . ..

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."[2]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth

---

[2]The inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon v. United States,* 560 U.S. 817, 827-28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under 18 U.S.C. § 3582(c)(2)).

in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Although the Sixth Circuit has concluded that this policy statement is not currently binding in connection with motions filed by defendants, *see United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), the courts of appeals have recognized that it continues to provide important "guideposts." *United States v. McGee*, -- F.3d --, 2021 WL 1168980, at *10 (10th Cir. Mar. 29, 2021); *see United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.").

In application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)   Medical Condition of the Defendant.—
  (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
  (ii)   The defendant is—
    (I)   suffering from a serious physical or medical condition,
    (II)   suffering from a serious functional or cognitive impairment, or
    (III)   experiencing deteriorating physical or mental health because of the aging process,
    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
(B)   Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
(C)   Family Circumstances.—
  (i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.
  (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (citations omitted). That statutory requirement means that a defendant's reasons for release must satisfy two strict criteria. 18 U.S.C. § 3582(c)(1)(A)(i). The defendant's reasons must be "extraordinary"—meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). The reasons must also be "compelling"— meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. A defendant must establish both criteria to satisfy the statute's eligibility threshold.

Constantine has satisfied neither.

## B.     COVID-19 and Compassionate Release

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. The Third Circuit therefore held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) (not precedential) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) ("the presence of COVID-19 in a

prison, even in large numbers, does not justify compassionate release on its own.").

The CDC's list of risk factors was most recently updated on March 29, 2021. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. It reports a list of conditions that "can make you more likely to get severely ill from COVID-19." An inmate who has not been offered a vaccine, who presents a condition on that list, presents an "extraordinary and compelling reason" allowing consideration of compassionate release.[3]

---

[3]Before March 29, 2021, the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness. Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. At that time, the government maintained – and most courts agreed – that inmates with conditions on the "might" list did not present an extraordinary basis for relief. *See, e.g.*, *United States v. Durham*, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020); *United States v. Moldover*, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").

In the March 29 revision, the CDC merged the two lists without extensive explanation. The CDC also presents a page with information for healthcare providers, which discusses the evidentiary basis for designating each risk factor and indicates that there remains less extensive support for drawing conclusions

### C.    The Defendant's Circumstances

Here, Constantine presents the risk factor of hypertension, but it is being treated with medication at FCI McKean. However, he no longer presents an "extraordinary and compelling reason" because he has declined vaccination.

On April 29, 2021, Constantine was offered Janssen COVID-19 vaccine and he refused it. On April 30, 2021, Constantine was offered the Moderna COVID-19 vaccine and he refused it. On February 3, 2021, Constantine was offered the Pfizer COVID-19 vaccine, and he refused it. He has no known medical contraindication for the vaccine. His motion for compassionate release should be denied for this reason.

The government during the pandemic has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by

---

regarding most conditions formerly listed as "might" factors. *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. The government nevertheless continues to follow CDC guidance and therefore relies on the CDC's expanded list to define what constitutes an "extraordinary and compelling" basis for consideration of compassionate release of an inmate who has not been offered a vaccine.

It also bears noting that although age is not listed as a separate risk factor, the CDC has emphasized that it is an important indicator of risk. The CDC page regarding risk factors, updated on March 29, 2021, states: "More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45."

the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision.

That circumstance now does not exist in this case. Constantine has been offered and refused the Pfizer vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. *See* FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download.

Constantine has been offered and refused the Moderna vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was approximately 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19. *See* FDA Decision Memorandum, Moderna - Dec. 18, 2020, https://www.fda.gov/media/144673/download.

Various studies continue to confirm the efficacy of the vaccines. For instance, on April 1, 2021, Pfizer reported its follow-up study on the

44,000 participants in its Phase 3 trial. It found that the vaccine, based on mRNA technology (like the Moderna vaccine), was 91.3% effective against COVID-19, measured seven days through up to six months after the second dose, across age, gender, race, and ethnicity demographics, across participants with a variety of underlying conditions, and during a period through March 13, 2021, when variants were circulating. Pfizer further found that the vaccine was 100% effective against severe disease as defined by the CDC and 95.3% effective against severe disease as defined by the FDA.

https://www.businesswire.com/news/home/20210401005365/en/.

The CDC likewise recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all eligible persons . . . ." "Interim Estimates of Vaccine Effectiveness,"

https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

Finally, Constantine has been offered the Janssen vaccine approved by the FDA for emergency use based on its conclusion that "it is reasonable to believe that the Janssen COVID-19 vaccine may be effective to prevent such serious or life-threatening disease or condition that can be caused by SARS-CoV-2." The FDA relied on testing among 40,000 participants in a double-blind trial, measuring the incidence of COVID-19 infection 28 days after vaccination, in which researchers found that the vaccine was approximately 66% effective in preventing moderate to severe COVID-19 and approximately 85% effective in preventing severe COVID-19, and none of the vaccinated participants died of COVID-19. FDA Decision Memorandum – Janssen, https://www.fda.gov/media/146338/download.[4]

Constantine, notwithstanding the risk factor he presents, does not present any extraordinary and compelling reason allowing

---

[4]On April 13, 2021, the government announced a pause in the administration of the Janssen vaccine, to study the circumstances involving blood clots experienced by a few of the 7 million people to receive the vaccine thus far (specifically, six women between the ages of 18 and 48). The problem does not appear to involve the efficacy of the vaccine. BOP has offered this vaccine in limited numbers primarily to inmates at BOP pretrial and transfer facilities, given the transitory nature of the populations at those institutions and the advantage there of employing a single-dose vaccine. BOP has elsewhere relied on the Pfizer and Moderna vaccines and will continue to offer those, including to the defendant should he change his mind and should the Janssen vaccine remain unavailable.

compassionate release. On three separate occasions he has elected to decline three different vaccines, forgoing the opportunity for "self-care" that BOP made available. For this reason, the motion should be denied. *See, e.g.*, *United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (citing more than a dozen cases); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (the court reviews CDC guidance and numerous other decisions and concludes, "The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release.").

Thus, in *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021), the court denied relief even though the defendant was 58 years old and suffered from, among other conditions, obesity (BMI of 31.2), type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol, explaining:

> However, Jackson was offered the Moderna COVID-19 vaccine on January 6, 2021 and elected not to be vaccinated. Thus it seems

that Jackson has voluntarily declined to "provide self-care" and mitigate her risk of a severe COVID-19 infection. The FDA approved the Moderna vaccine for use after extensive testing, concluding that it is 95% effective in preventing infection and virtually entirely effective in preventing severe disease, including in participants with medical comorbidities associated with high risk of severe COVID-19. See Food and Drug Administration, Emergency Use Authorization, https://www.fda.gov/media/144673/download (Dec. 18, 2020). There is no apparent medical reason that Jackson should not receive the vaccine. It was offered to her by FCI Danbury's medical staff. As her medical records note, she merely "refused." Where Jackson bears the burden of demonstrating her entitlement to relief, the Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release.

*United States v. Jackson*, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021). Another judge wrote:

Defendant cannot establish that his conditions are exceptional and demand immediate release when he intentionally prevents the BOP from mitigating dangers to his health and safety. 18 U.S.C. § 3582(c)(1)(A). A prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination. Allowing federal prisoners to qualify for compassionate release by declining to receive a COVID-19 vaccine, without justification, would discourage prisoners from becoming vaccinated. The court is exceedingly hesitant to provide prisoners an incentive to increase their risk of contracting COVID-19 and developing severe symptoms. Such a result would be profoundly counter-productive and would militate against the ameliorative purposes of compassionate release. Denial of Defendant's request for release is warranted on this basis alone.

*United States v. Austin*, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021) (Cleland, J.); *see also, e.g.*, *United States v. Jackson*, 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021) ("Jackson's decision to refuse the vaccine flies in the face of any medical recommendation regarding the vaccines. While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."); *United States v. Williams*, 2021 WL 321904 (D. Ariz. Feb. 1, 2021) (defendant's explanation for refusal was "incredible in light of his claim that his risk of a serious illness from the COVID-19 virus is an extraordinary and compelling reason for his immediate release"); *United States v. Gonzalez Zambrano*, 2021 WL 248592 (N.D. Iowa Jan. 25, 2021) (denied based on 3553(a) factors, but states: "It would be paradoxical to endorse a system whereby a defendant could [proffer] extraordinary and compelling circumstances for compassionate release" by refusing "health care [offered] to them"); *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19

dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction.").

Nearly all courts agree with these views. *See, e.g.*, *United States v. Martinez*, 2021 WL 718208, at *2 (D. Ariz. Feb. 24, 2021); *United States v. Figueroa*, 2021 WL 1122590, at *5 (E.D. Cal. Mar. 24, 2021) ("If defendants could buttress their motions for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive."); *United States v. Piles*, 2021 WL 1198019, at *3 (D.D.C. Mar. 30, 2021); *United States v. Reynoso*, 2021 WL 950081, at *2 (D. Mass. Mar. 12, 2021) ("[T]he sincerity of his concern for his health is dubious given that he rejected the opportunity to receive the COVID-19 vaccine"); *United States v. Toney*, 2021 WL 1175410, at *1 (E.D. Mich. Mar. 29, 2021) (Levy, J.); *United States v. French*, 2021 WL 1316706, at *6 (M.D. Tenn. Apr. 8, 2021) (relief denied in part based on refusal of vaccine).

At this time, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus.

In addition, the only risk factor that Constantine presents is hypertension. The CDC has consistently indicated that there is insufficient evidence to conclude that hypertension places a person at a greater risk of a severe outcome from COVID-19. The CDC previously stated that hypertension "might" present a risk, and more recently stated that it "possibly" can make a person more prone to severe illness, as distinct from many other conditions that the CDC states can make severe illness more likely. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Accordingly, many courts, with endorsement from courts of appeals, have denied relief when hypertension is the only potential risk factor presented.[5] In addition, courts have maintained this view

---

[5] *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) ("commonplace" conditions of hypertension and hyperlipidemia are not extraordinary); *United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021) (affirming district court's conclusion that defendant's hypertension was not extraordinary and compelling); *United States v. Tartaglione*, 2020 WL 3969778, at *6 (E.D. Pa. July 14, 2020) (hypertension and hyperthyroidism, if presented by 64-year-old, "are not the kind of conditions that place her at a uniquely high risk of grave illness or death if infected by COVID-19."); *United States v. Martines*, 2021 WL 427285, at *2 (E.D. Pa. Feb. 8, 2021) (hypertension of 67-year-old is not a sufficient risk factor); *United States v. Williams*, 2020 WL 4756738, at *5 (E.D. Pa. Aug. 17, 2020) ("Although the CDC recognizes that having certain other conditions, including hypertension or high blood pressure 'might be at an increased risk,' hypertension is not considered high risk at this time."); *United States v. Ackerman*, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) ("Where, as here,

following the CDC's March 29, 2021, revision of its list of risk factors, which singled out hypertension as only "possibly" presenting a risk. *See, e.g.*, *United States v. Robinson*, 2021 WL 1318027, at *8 .D.C. Apr. 8, 2021); *United States v. French*, 2021 WL 1316706, at *5-6 (M.D. Tenn. Apr. 8, 2021).

It also bears noting that Constantine contracted COVID-19 and, fortunately, apparently recovered from it without significant consequence. We cannot say that this eliminates all risk, given that there is not yet scientific certainty regarding the risk of reinfection. But in this circumstance, the large majority of courts to address the matter have concluded that the risk is mitigated and compassionate release is not justified, even before vaccination. *See, e.g.*, *United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) ("the risk of

---

there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted.") (citing cases); *United States v. Syed*, 2020 WL 5995053, at *5 (M.D. Tenn. Oct. 9, 2020) (even after six months the CDC continues to state that hypertension only "might" present a risk; the court therefore "concludes that Defendant's hypertension does not constitute extraordinary and compelling reasons for his release."); *United States v. Colbert*, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020) (Cleland, J.) ("Hypertension, a condition that affects about 46% of the U.S. adult population, high cholesterol, and having had prostate cancer in the past are not 'extraordinary and compelling' conditions.").

reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here. Presently, there is no scientific consensus on the risk of reinfection. . . . Moreover, this Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic. To the contrary, the consensus is that such a circumstance does not warrant release."). A court recently summarized:

> [T]he United States Department of Health and Human Services has stated that "of the millions of patients who have recovered from COVID-19, which is caused by a coronavirus, only a handful have been confirmed as having gotten the disease again. Based on the reported recurrence rate from the early stages of ongoing research, the chances of becoming reinfected appear to be very small." *See* https://combatcovid.hhs.gov/ive-had-covid-19 (last visited December 28, 2020). And a recent study by the University of Oxford and the Oxford University Hospitals NHS Foundation Trust found that those who previously had COVID-19 are highly unlikely to contract the illness again for at least six months following the first infection. *See* https://www.ox.ac.uk/news/ 2020-11-20-prior-covid-19-infection-offers-protection-re-infection-least-six-months# (last visited December 28, 2020). The National Cancer Institute agrees, reporting that the COVID-19 antibody "protective effect is strong and comparable to the protection afforded by effective SARS-CoV-2 vaccines, although developing protection from vaccination is much safer than from natural infection. This finding suggests that people who have a positive antibody test result using widely available assays have substantial immunity to SARS-CoV-2 and are at lower risk for future infection." *See* https://www.cancer.gov/news-events/cancer-currents-blog/2020/ coronavirus-antibodies-protect-against-future-infection (last visited December 28, 2020).

*United States v. Pavao-Kaaekuahiwi*, 2020 WL 7700097, at \*3 (D. Haw. Dec. 28, 2020); *see also United States v. Carter*, 2021 WL 427110, at \*1 (E.D. Pa. Feb. 8, 2021) (relying on the same reports and reaching the same conclusion). Another court expounded: "it is highly unlikely Andrews will be reinfected, and speculative that reinfection would lead to significantly more serious symptoms than she has already experienced. Further, it is likely that a COVID-19 vaccination will be available relatively soon for inmates in the federal institutions." *United States v. Andrews*, 2020 WL 7714708, at \*4 (D. Nev. Dec. 29, 2020); *see also, e.g.*, *United States v. Jenkins*, 2021 WL 665854, at \*4 (S.D. Ind. Feb. 19, 2021) ("To date, this Court has declined to find extraordinary and compelling circumstances warranting a sentence reduction when a defendant has recovered from COVID-19 – even when that defendant has risk factors for severe symptoms. . . . The fact that the BOP is now actively vaccinating inmates against COVID-19 . . . only underscores the speculative nature of any concern about reinfection."); *United States v. Marley*, 2020 WL 7768406, at \*3 (S.D.N.Y. Dec. 30, 2020) ("With the vaccine rollout underway in the United States, the Court anticipates that Mr. Marley will receive a vaccine well in advance of his becoming

susceptible to reinfection."); *United States v. Thompson*, 2020 WL 7771141, at \*3 (N.D. Ill. Dec. 30, 2020); *United States v. McCallum*, 2020 WL 7647198, at \*1 (S.D.N.Y. Dec. 23, 2020) ("Now that he has weathered the disease, a sentence reduction based on the risk of contracting it no longer makes sense.

## IV.   18 U.S.C. 3553(a) considerations

Even if Constantine is at an elevated medical risk, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate before relief can be granted. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors).

This Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction".

*United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021). The defendant must therefore "make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Id.* Here, even if the Court were to find that Constantine established extraordinary and compelling reasons for his release, the § 3553(a) factors should still disqualify him.

### A. History and Characteristics of the Defendant

Constantine is 35 years old and has a prior felony conviction for armed robbery. He obtained the armed robbery conviction in 2004 and served 30 months in custody. Although Constantine appears to come from a somewhat stable home he also had substance abuse and gambling problems. (PSR ¶¶ 49, 51).

### B. Adequate Deterrence and Protection of the Public

Constantine's prior conviction for armed robbery, and custodial sentence of 30 months did not deter him from engaging in the conduct at issue here. General deterrence is also of particular concern in Michigan, which leads the nation in incidents of identity theft.[6] With

---

[6] WLNS, *Michigan is #1 . . . in identity theft*, April 14, 2017, http://wlns.com/2017/04/14/michigan-is-1-in-identity-theft/.

technological advances and increasingly prolific data breaches, it is becoming easier and easier to obtain stolen personal identifying information.

### C. Length of sentence remaining

Constantine's long remaining sentence weighs heavily against release. This Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a recent published decision. *Ruffin*, 978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008.

Constantine has served only 11 months of a 70-month sentence and is not eligible for release until July 15, 2025. The plain language of the compassionate-release statute makes the point even more directly:

it requires that the defendant's reasons for release "warrant such a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, requiring him to justify the magnitude of his requested sentence reduction. *Id.* So a defendant with many years left on his sentence, like Constantine, must show that his reasons for release are so powerful that they "warrant" a "reduction" of that size. *Id.*

It is also important to note that Constantine received a fair and arguably lenient sentence. His guidelines provided for a maximum sentence of 81 months and he received 70 months.  (PSR ¶ 60; ECF No. 33. PageID 118-19). Constantine fails to demonstrate how release, 11 months into an 80-month sentence for a serious fraud offense, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A).

Consideration of the factors above shows that release at this point is inappropriate based on the offense of conviction, the defendant's managed medical condition, and the amount of time remaining on the defendant's sentence. At present, these considerations – including the

defendant's risk of danger to the community, his multiple refusals to accept vaccination, and BOP's strenuous efforts to protect inmates against the spread of COVID-19 – counsel strongly against relief.

### V.   Binding authority prohibits the Court from granting release, because he has not satisfied the statutory exhaustion requirement.

Additionally, the Court should dismiss Constantine's motion, because he has not satisfied the exhaustion requirement for compassionate release under 18 § 3582(c)(1)(A). A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). As the Sixth Circuit held in *Alam*, this statutory exhaustion requirement is "a mandatory condition" that "must be enforced" when the government raises it. *Id*. at 832–36; *accord United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

Section 3582(c)(1)(A) also means that an inmate may not move for compassionate release on a different ground than the one he raised during the administrative process. The whole point of § 3582(c)(1)(A)'s exhaustion requirement is to ensure that the Bureau of Prisons has the opportunity to evaluate and consider an inmate's request first, while allowing the inmate to seek relief in court if the Bureau of Prisons denies or fails to act upon the request. *Alam*, 960 F.3d at 835–36. So when "the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before [he] brings his request to the courts." *United States v. Asmar*, 465 F.Supp.3d 716, 719 (E.D. Mich. 2020); *accord United States v. Mogavero,* No. 15-00074, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden."); *United States v. Jenkins*, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020); *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020).

The best reading of Sixth Circuit law is also that § 3582(c)(1)(A) requires issue-specific exhaustion. As the Sixth Circuit has explained, an exhaustion statute "written in more general terms" commands "issue exhaustion if an agency's rules so require." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019) (*citing Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)); *accord Cuevas-Nuno v. Barr*, 969 F.3d 331, 334–35 & n.4 (6th Cir. 2020). Section 3582(c)(1)(A) is just such a statute, and the agency's rules here require an inmate to identify "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration" for compassionate release. 28 C.F.R. § 571.61(a)(1).

Thus, an inmate seeking relief based on a combination of Covid-19 and a particular medical condition or conditions must first make that specific request to the Bureau of Prisons before seeking relief in court. *Island Creek Coal Co.,* 937 F.3d at 746–47*; see Alam*, 960 F.3d at 834–36 (emphasizing the issue-specific nature of exhaustion under § 3582(c)(1)(A)).

Constantine did not comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement, because he did not identify or raise his

allegation of long-haul COVID-19 syndrome issues in his request to the warden. Instead, his request referenced only the Covid-19 pandemic, asthmas, knee injury, and BMI and the warden denied it for this very reason, noting that release "should be considered if the inmate is completely disabled or ca[able of only limited self-care and is confined to a bed or chair more than 50% of waking hours. You are a care level 1, simple or healthy chronic care inmate." (Exhibit A: Request for Compassionate Release). Constantine's motion for compassionate release should therefore be dismissed for failure to exhaust. *Alam*, 960 F.3d at 836.

## Conclusion

The Court should deny Constantine's request for compassionate release.

Respectfully Submitted,
SAIMA S. MOHSIN
Acting United States Attorney

s/KAREN L. REYNOLDS
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: 313-226-9672
Email:karen.reynolds@usdoj.gov

Date: July 7, 2021

## Certificate of Service

I hereby certify that on July 7, 2021, the foregoing document was electronically filed by an employee of the United States Attorney's Office with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.  A copy was also mailed via Regular U.S. Mail to the following:

LeRoy Constantine
#56720-039
Federal Correctional Institution
McKean
6975 Route 59
Lewis Run, PA 16738

s/Karen L. Reynolds
United States Attorney's Office
211 West Fort Street, Suite 2001
Detroit, Michigan 48226