UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                          Case No. 18-20655

vs.                                        HON. MARK A. GOLDSMITH

LEROY CONSTANTINE,

       Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTIONS FOR COMPASSIONATE
RELEASE (Dkts. 53, 55)**

Defendant LeRoy Constantine pleaded guilty to two counts of wire fraud and one count of aggravated identity theft. See Judgement (Dkt. 33). On October 10, 2019, the Court sentenced Constantine to 70 months' imprisonment. Constantine was scheduled to surrender to federal custody to begin his sentence on May 26, 2020. See 3/31/20 Order (Dkt. 38). However, on April 30, 2020, Constantine filed a motion for compassionate release, asking the Court to "structure his imprisonment to home confinement and place him on electronic monitor" due to his concerns about COVID-19 conditions in prison. Mot. for Home Confinement (Dkt. 40). On June 18, 2020, the Court denied Constantine's motion without prejudice due to Constantine's failure to comply with the mandatory exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A). 6/18/20 Op. (Dkt. 47). Constantine filed a motion for reconsideration of the Court's opinion (Dkt. 50), which the Court denied (Dkt. 52). Constantine began serving his sentence in July 2020. He is currently incarcerated at the McKean federal correctional institution (FCI McKean) and has a projected release date of July 15, 2025.

Constantine has now filed new motions for compassionate release based on his concerns related to COVID-19 (Dkts. 53, 55).[1] He argues that he is entitled to release because: (i) his race (Black) and medical conditions (pre-diabetes, obesity, and hypertension) render him susceptible to reinfection; (ii) inmates at FCI McKean are not protected from COVID-19; and (iii) he is experiencing long-haul syndrome[2] after contracting COVID-19 in January 2021. Constantine specifically requests that the Court "re-structure his term of [i]mprisonment to home confinement and place him on electronic monitor." Mot. for Release at 5.[3] The Government argues that the Court should deny Constantine's motion because: (i) Constantine failed to comply with the mandatory exhaustion requirements for compassionate release; (ii) Constantine's fears of reinfection are not extraordinary and compelling in light of the fact that Constantine has been offered a COVID-19 vaccine but refused

---

[1] Constantine filed two motions for compassionate release that are identical, with two exceptions. First, Constantine signed only the motion filed on June 21, 2021. Second, Constantine attached his Bureau of Prisons (BOP) health records only to the motion filed on June 17, 2021. Because the briefs in support of Constantine's motions are identical—as is the pagination of the briefs— the Court will cite to only the June 21, 2021 motion when referencing arguments raised in Constantine's identical briefs.

[2] "Long-haul syndrome" refers to when someone has recovered from COVID-19—i.e., the person tests negative for the virus—but continues to experience symptoms after recovering. See Mayo Clinic, "Post–COVID-19 Syndrome (Long Haul Syndrome): Description of a Multidisciplinary Clinic at Mayo Clinic and Characteristics of the Initial Patient Cohort," https://www.mayoclinicproceedings.org/article/S0025-6196(21)00356-6/fulltext [https://perma.cc/L45C-SFPA].

[3] To the extent that Constantine seeks home confinement under the Coronavirus Aid, Relief, and Economic Security Act, § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (2020), his motion is denied because the BOP has sole discretion to grant such relief. See United States v. Mattice, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020). However, the Court may consider Constantine's request for home confinement under § 3582(c). Courts granting compassionate release pursuant to that statute may convert a defendant's remaining sentence term to a term of supervised release and impose an initial term of home detention. See, e.g., United States v. Amarrah, 458 F. Supp. 3d 611, 620–621 (E.D. Mich. 2020).

to be vaccinated; and (iii) the factors listed in 18 U.S.C. § 3553(a) weigh against granting Constantine release. Resp. at 16 (Dkt. 60).

Having reviewed all the briefing and record evidence, the Court concludes that Constantine has failed to show extraordinary and compelling reasons for release and, further, the § 3553(a) factors do not favor release. Accordingly, the Court denies Constantine's motions.[4]

### I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020). Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine

---

[4] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

3

whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

### A. Exhaustion

Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the BOP or wait thirty days from when the inmate filed a request with his or her warden. United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020). Constantine filled out a form to request compassionate release and submitted it to his warden before filing the instant motions. See 12/10/20 Request (Dkt. 60-2). Constantine checked a box on the form indicating that his request was based on "[d]ebilitated [m]edical [c]ondition." Id. at PageID.311. In the section of the form asking about the extraordinary and compelling circumstances that warrant his release, Constantine wrote:

> In wake of [the] recent COVID-19 outbreak, I am in fear for my life. On 12/08/20 there were a total of 167 COVID-19 cases reported by FCI Mc[K]ean. Based on statistics from the [Centers for Disease Prevention and Control (CDC)], and the virus['s] transmitting characteristics, this could be a death sentence for me due to my aggravated pre-existing Asthma, knee injury[,] and current BMI of 30 [that] place me at a greater risk to contract or transmit the virus.

Id. The warden denied Constantine's request in a letter dated January 5, 2021. 1/5/21 Denial at PageID.197 (Dkt. 53-1). In that letter, the warden noted that Constantine is a "simple or healthy chronic care inmate" and explained that Constantine's concern about contracting COVID-19 did not warrant Constantine's early release. Id.

The Government argues, however, that § 3582(c)(1)(A) requires issue-specific exhaustion and that Constantine's administrative request failed to raise long-haul COVID-19 syndrome as an extraordinary and compelling circumstance for his release. Resp. at 34–35. The Sixth Circuit has never held that issue-specific exhaustion is required in the compassionate release context. Nor does the statutory text contain an issue exhaustion requirement. See 18 U.S.C. § 3582(c)(1);

4

United States v. Williams, 473 F. Supp. 3d 772, 775 (E.D. Mich. 2020) (noting that issue exhaustion "is not mandated in any plain terms of the statute"). Further, several courts within this District have rejected the notion that issue-specific exhaustion is required in the compassionate release context. See, e.g., United States v. Sherrod, No. 19-20139, 2021 WL 3473236, at *2 (E.D. Mich. Aug. 6, 2021) ("[T]his Court will join the majority of district courts in holding that issue exhaustion is not required."); United States v. Ferguson, No. 10-20403, 2021 WL 1685944, at *2 (E.D. Mich. Apr. 29, 2021) ("The Court is persuaded by the reasoning of the courts which have held § 3582(c)(1)(A) does not require issue exhaustion.").

Even assuming that § 3582(c)(1)(A) requires issue-specific exhaustion, the requirement is likely satisfied here. Although Constantine did not specifically mention long-haul syndrome in his request to the warden, it is nevertheless clear that the basis for his request is his health and his fear of contracting COVID-19. Constantine's complaints regarding long-haul symptoms clearly fit within this framework. Further, even if Constantine has not satisfied issue-specific exhaustion, this failure is of no consequence as his motion nevertheless fails for the reasons discussed below.

B.  **Extraordinary and Compelling Circumstances**

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Prior to the development and distribution of the COVID-19 vaccines, courts would generally consult the guidance on high-risk factors published by the CDC to determine whether a defendant's specific conditions placed him or her at a higher risk of suffering severe illness from COVID-19. See

5

United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021).[5] However, following the BOP's mass distribution of vaccines to inmates, courts now begin the analysis by asking whether an inmate was offered and refused a COVID-19 vaccine. According to the CDC, the vaccine reduces the risk of COVID-19 among people who are fully vaccinated "by 90 percent or more."[6] Further, regarding people who are vaccinated but still get COVID-19, the vaccine has been shown to "provide protection against severe illness and hospitalization among people of all ages eligible to receive [it]." Id. Significantly, "[t]his includes people . . . who are at higher risk of severe outcomes from COVID-19." Id.

Courts regularly deny motions for compassionate release on the basis of COVID-19 when an inmate has declined to receive a COVID-19 vaccine. See United States v. Gibson, No. 11-20551, 2021 WL 2549682, at *3 (E.D. Mich. June 22, 2021) (collecting cases). As one court aptly explained:

> A prisoner will not be heard to complain of the risk of severe illness while he simultaneously avoids basic, sensible precautionary measures such as vaccination. Allowing a prisoner to qualify for compassionate release in the face of his refusal

---

[5] Constantine argues that he is more susceptible to COVID-19 because he is obese and has pre-diabetes and hypertension. The CDC does not list pre-diabetes as a condition that increases an individual's risk of severe illness from COVID-19. See CDC, "People With Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/WPX2-F8FZ]. Further, while being overweight—defined as having a body mass index (BMI) over 25—can increase an individual's risk of severe illness, see id., Constantine is not obese. He states that he is 5.84 feet tall and weighs 178 pounds, meaning that he has a BMI of 25. Finally, while hypertension can increase an individual's risk of severe illness, it appears that Constantine's hypertension is being well-managed through medication at FCI McKean. See BOP Health Records at PageID.315 (Dkt. 61) (medical note explaining that Constantine has been prescribed a daily regimen of Lisinopril to treat his hypertension). "Where, as here, there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted." United States v. Ackerman, No. 11-740-KSM-1, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (citing cases).

[6] CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/RY9T-ZCCR].

>to receive a COVID-19 vaccine would serve to discourage prisoners from becoming vaccinated. This court is exceedingly hesitant to provide prisoners an incentive to increase their risk of contracting COVID-19 and developing severe symptoms. Such a result would be plainly counter-productive and dilute the ameliorative purposes of compassionate release.

United States v. Jackson, No. 17-20724, 2021 WL 2410959, at *2 (E.D. Mich. June 14, 2021).

Constantine was offered—and refused—a COVID-19 vaccine not once, not twice, but three times. Specifically, on February 3, 2021, Constantine was offered the Pfizer vaccine, and he refused it. BOP Health Records at PageID.355. On April 29, 2021, Constantine was offered the Janssen vaccine, and he refused it. Id. And on April 30, 2021, Constantine was offered the Moderna vaccine, and he refused it. Id.

As the Government points out, Constantine has no known medical contraindication for the vaccine. See Resp. at 16. The only reason that Constantine offers to explain his refusal is his conclusory statement in his reply brief that he has a "sincerely held religious belief against taking any vaccinations." Reply at PageID.388 (Dkt. 62). However, "[a] reply brief 'is not the proper vehicle to raise new arguments.'" United States v. Stephens, No. 06-CR-20365, 2020 WL 5769125, at *6 (E.D. Mich. Sept. 28, 2020) (quoting White v. United States, 23 F. App'x 570, 571 (7th Cir. 2001)).[7]

To the extent that Constantine argues that COVID-19 conditions at FCI McKean constitute extraordinary and compelling reasons to release him, his argument is undercut by currently available data. Presently, of the 990 inmates at FCI McKean,[8] 827 have been vaccinated

---

[7] Even assuming that Constantine has a sincerely held religious belief that prevents him from getting vaccinated, his motion still fails based on the § 3553(a) factors, as discussed below.

[8] BOP, "FCI McKean," https://www.bop.gov/locations/institutions/mck/ [https://perma.cc/M7GZ-CY3S].

(83.53%).⁹ Further, there are currently no confirmed active cases of COVID-19 among inmates FCI McKean, and there are only two confirmed cases among staff.¹⁰

Finally, the Court is unpersuaded by Constantine's argument that his long-haul symptoms—specifically, shortness of breath, headaches, and fatigue—are extraordinary and compelling reasons to release. Several other courts have held that long-haul symptoms do not constitute extraordinary and compelling reasons to release a prisoner, particularly when those symptoms are manageable in prison. See, e.g., United States v. Kelley, No. 15-cr-00444-CRB-2, 2021 WL 2322467, at *3 (N.D. Cal. June 7, 2021); United States v. Shkambi, No. 4:09-CR-193, 2021 WL 1721821, at *5 (E.D. Tex. Apr. 30, 2021). This Court adopts the same approach. As reflected by the warden's denial of Constantine's request for compassionate release, Constantine is a "simple or healthy chronic care inmate." 1/5/21 Denial at PageID.197. Constantine's BOP Health Records likewise reflect that he receives medical services through a Care Level 1 institution, see BOP Health Records at PageID.326 (referencing that Constantine's services are provided through a "care level 1 institution"), which indicates that Constantine's long-haul symptoms are manageable in prison, cf. Shkambi, 2021 WL 1721821, at *5 ("[Defendant] is listed as a Care Level-1 inmate. This care level suggests his symptoms are manageable in prison and do not warrant a sentence reduction for compassionate release."). Accordingly, Constantine's long-haul symptoms do not constitute extraordinary and compelling reasons to release him.

For these reasons, the Court holds that Constantine has failed to show an extraordinary and compelling reason to grant him release. Even if he had, Constantine's release would still be unwarranted based on the § 3553(a) factors, as explained below.

---

⁹ BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ [https://perma.cc/9KHH-ZFH6].

¹⁰ BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ [https://perma.cc/9KHH-ZFH6].

### C. Section 3553(a) Factors

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

Constantine's identity theft and fraud activity was very serious and detrimental to the community, as this conduct involved a large amount of money and multiple victims. Specifically, Constantine defrauded the Michigan Unemployment Insurance Agency and stole almost $200,000. See Rule 11 Plea Agreement at 4 (Dkt. 28). To make the fraudulent unemployment insurance claims, Constantine obtained the personal identifying information of unsuspecting victims. Id. at 3.

As the Government argues, "deterrence is . . . of particular concern in Michigan, which leads the nation in incidents of identity theft." Resp. at 29. Unfortunately, Constantine is apparently not easily deterred. He was previously convicted for armed robbery, for which he served 30 months. This was apparently insufficient to deter him from committing the conduct at issue here. If released now, there is a real risk that Constantine would commit further crimes that pose serious dangers to the safety and well-being of the community.

The Court must ensure that the time served by the defendant not only is sufficient to deter the defendant from committing future crimes but also is sufficient to promote respect for the law. As noted above, Constantine was sentenced to 70 months' imprisonment—an arguably lenient sentence given that the sentencing guidelines called for a maximum sentence of 81 months. The fact that Constantine has served only slightly more than 12 months of his 70-month sentence weighs strongly in favor of denying Constantine's motion. Granting a motion where the defendant

9

has served significantly less than half of his sentence would not promote respect for the law. See, e.g., Ruffin, 978 F.3d at 1008 (affirming district court decision that § 3553(a) factors did not support a sentence reduction in part because the defendant had yet to serve even half of his sentence); United States v. Richards, No. 12-20372, 2021 WL 912389, at *3 (E.D. Mich. Mar. 10, 2021) ("[A]llowing Defendant to be released after serving less than half of his sentence would not promote respect for the law or proper deterrence, [or] provide just punishment . . . .").

Constantine argues that his efforts towards rehabilitation in prison weigh in favor of granting him release. Specifically, Constantine contends that he "enrolled in substantial educational programming to facilitate his re-entry into society" and has secured offers for immediate employment from two companies upon his release. Mot. at 2 (citing BOP Programming (Dkt. 53-3), Release Plan – Jobs (Dkt. 53-3)). The Court commends Constantine on his efforts towards rehabilitation. However, Constantine's rehabilitative efforts do not outweigh the seriousness of his crime and the need to promote respect for the law.

Accordingly, the § 3553(a) factors weigh against granting Constantine's request for release.

## II. CONCLUSION

For the reasons stated above, Constantine's motions for compassionate release (Dkts. 53, 55) are denied.

SO ORDERED.

Dated: October 1, 2021       s/Mark A. Goldsmith
    Detroit, Michigan      MARK A. GOLDSMITH
         United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 1, 2021.

                                                s/Karri Sandusky
                                                KARRI SANDUSKY
                                                Case Manager